McKinney, J.,
delivered the opinion of the Court.
The complainant, who is a jeme covert, brought this hill, by her next friend, to recover a tract of land of *261 eighty-nine acres, in Stewart county; which, by a deed executed jointly by herself and husband, on the 29th of July, 1850, was conveyed to the defendant Cooly, who, shortly thereafter, sold and conveyed the same to the defendant, Satterfield, who is now in possession thereof. The land had been conveyed to the complainant when a feme sole, by her grandmother. The consideration ’ paid by Cooly, to the defendant Coleman, complainant’s husband, for said land, including the crop growing thereon, is stated in the deed, and shown by the proof, to have been $225 00, of which sum, one hundred dollars was the estimated value of the crop; making the price of the land but $125 00. ' ■ The proof shows that the land itself, was then worth seven to eight dollars per acre; and in the deed from Cooly to Satterfield, the consideration is stated to have been $700 00.
The bill charges, that she was induced to sign the deed . to Cooly, and to acknowledge its execution, by fraud and threats of violence made against herself, and against the life of her husband, by the defendant, Cooly; and also to Surrender possession of the land, and remove to another State. It is further charged, that Satterfield, who purchased from Cooly, on the 2d of December, 1850, had full knowledge, at the time of his purchase, of all the facts respecting the manner in which the conveyance for the land had been .extorted from her and her husband, by Cooly. The bill prays that the deed may be declared void; that she be restored to possession of the land; and for general relief.
The bill is taken as confessed against Cooly. The defendant, Satterfield, positively denies that, either at the time of his purchase, or of the payment of the purchase *262 money, he had any knowledge or information whatever, of the alleged fraud or force, on the part of Cooly, in obtaining said deed; nor had he any knowledge or information thereof prior to this suit; and insists that he is a Iona fide purchaser, for a full and valuable consideration ; and therefore claims that he shall be protected in his purchase.
The charges in the bill, as to the defendant, Cooly, are very fully sustained by the proof. He was himself examined as a witness for complainant, — without exception, as it seems, — and makes out a stronger, and more aggravated case of fraud and coercion, than is charged in the bill. Erom his own showing, however, and from other testimony in the record, his statement is perhaps entitled to no consideration, except for the purpose of charging himself. But, his evidence aside, the allegations of the bill, as to him, are sufficiently established. But as regards the defendant, Satterfield, there is no sufficient evidence to overcome the substantial averments of the answer, that, at the time of the purchase and payment of the consideration money, and reception of the conveyance for the land he had no notice, or knowledge of the facts upon which the complainant’s claim to relief is founded.
The Chancellor dismissed the bill as to all the defendants. We find, upon examination of the record, that the legal obstacles which were supposed, on opening the case, to lie in the way of complainant to relief against either defendant, do not exist. The bill was filed in less than six years from the date of the conveyance to Cooly; so that, both the statute of limitations of 1819, and the *263 general statute applicable to money demands, in equity, are out of the case.
The decree of the Chancellor, as to Satterfield, was correct; and the only point to he considered is, whether the complainant is entitled to a decree against the defendant, Cooly, for the value of the land. The husband, it seems, declined to join with his wife in filing a bill to have the conveyance set aside, and to be restored to the possession of the land. And the first question is, can the wife, in such case, sue separately in equity? Whether or not the proof makes such a case as would entitle the husband to relief, so far as he is concerned, is a question not important to be considered. For, admitting that he might have maintained a suit in equity, in the joint names of himself and wife, to have the deed set aside, but refused to do so; or assuming, on the other hand, that, as to him, the deed was executed under such circumstances as would estop him, in equity as well as at law, from avoiding it; still, the question is, may not the wife, in either case, maintain a bill, by her next friend, to. be re-invested with the title, and restored to the possession of her estate, of which she had been deprived by the exercise of fraud and coercion towards her personally ? We think it clear that she may, under the act of 1849-50, eh. 36; and'perhaps upon general principles of law.
It is true, that, by the common law, the husband, by marriage, gains an estate of freehold in the lands of his wife, in her right, which continues at least during their joint lives, and may possibly last during his own life. And this interest he may, by his own deed, convey to another, and the conveyance will operate to vest the pur *264 chaser with the husband’s estate; or the husband may voluntarily suffer a disseizin; or acquiesce in a wrongful ouster of the possession; and in neither case can the wife, separately, take any step at law or in equity to regain the possession; she is without remedy, by the common law, so long as the coverture lasts. But, still, her ultimate fee simple interest is not affected during her disability; and on its termination, she will be remitted to her right of action to recover the possession.
But though the husband, by his own act, may defeat the wife’s enjoyment of the possession and profits of her land, by the principles of the common law, yet he has no power over her title or interest in fee; of this she can only be divested by her own voluntary act, in the • form prescribed by law. And the attempt to deprive her of it by fraud or force, either on the part of her husband, or a stranger, furnishes her a clear ground for redress in equity, where a married woman may sue separately.
In this view, upon general principles, the bill might well be sustained so far, at least, as it seeks to have the deed set aside. But under the act of 1849-50, her right to relief is perhaps broader and more ample. ' By that act, the common law is materially changed. It not only protects the husband’s interest in the lands of his wife from seizure and sale by his creditors, during Tier life, but it likewise disables the husband to sell or dispose of such interest, by his own act, during the wife’s lifetime, without her joining in the conveyance. By the necessary construction of this act, the wife cannot be deprived either of the title, or possession of her lands, except by her own voluntary act. And if a conveyance *265 has been procured from her by fraud or other improper means, whether by her husband or a stranger, she may maintain a bill to have it set aside, and to have the possession restored to her, — making the husband a party defendant. The object of the act, is the protection of the rights of the wife, rather than the husband’s; ' and to deny her the right to sue separately in equity, in a case like the present, would be to defeat the obvious intention of the statute.
The remaining inquiry is, what relief is the complainant entitled to, under the peculiar circumstances of this case ? It is clear that no decree can - be made against the defendant, Satterfield. He acquired the legal title to the land, without notice of the complainant’s equity, and for an adequate consideration, and must be treated as an innocent purchaser. The complainant cannot, therefore, regain the land itself. But we think it no less clear, that she is entitled to a decree against the. defendant, Cooly, for the value of the land. This measure of relief results upon either of two distinct grounds. First, that in consequence of his wrong, the estate is irrecoverably lost to the complainant; and, secondly, that viewed as a purchaser, he fraudulently acquired the property, without any adequate consideration given for it.
The decree of the Chancellor will be modified accordingly.